UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY GERARD BOOKER,

                 Petitioner,

v.                                     CASE NO. 10-12296
                                     HONORABLE ARTHUR J. TARNOW

CARMEN D. PALMER,

                 Respondent.

_____/

### OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Terry Gerard Booker has filed a *pro se* petition for the writ of habeas corpus, challenging his conviction for assault with intent to commit second-degree criminal sexual conduct. He alleges that he was deprived of his constitutional rights by prosecutorial misconduct and by the state district court's denial of his request to produce a *res gestae* witness at the preliminary examination. For reasons given below, these claims do not warrant habeas corpus relief. Accordingly, the habeas petition will be denied.

## I.  BACKGROUND

### A.  The Charge, Trial, Sentence, and Direct Appeal

#### 1.  Prosecution Witnesses

Petitioner was charged in Macomb County, Michigan with assault with intent to commit criminal sexual conduct involving penetration, Mich. Comp. Laws § 750.520g(1). The charge arose from an incident at a Speedway gas station in Eastpointe, Michigan on October 26, 2006.

*Booker v. Palmer*, No. 10-12296

Petitioner was tried in Macomb County Circuit Court in January of 2007.  The complainant testified that he was working the third shift at the Speedway store on October 25, 2006.  His friend William Vernier was present with him.  About 11:45 p.m. that night, Petitioner and one other person walked into the store.  The complainant recognized Petitioner from a prior occasion.  Petitioner walked toward the complainant, and the other person walked toward the front of the store.  Petitioner was intoxicated and became loud; he called the complainant his "boo" (boyfriend or girlfriend) and told William not to hurt the complainant.  Petitioner then asked to speak with the complainant and walked toward the back of the store.  The complainant declined to speak with Petitioner, but followed him to the back of the store and informed him that he was not permitted to go there.  Petitioner kept walking and responded that he knew Rochelle, the store manager.  Petitioner entered the bathroom, and the complainant followed him there.  Petitioner then closed the door, pushed the complainant against the door, and started rubbing the complainant's buttock with his hand.  In the process, he tore the complainant's jeans slightly.  Petitioner next grabbed the complainant by the neck, tipped his body over the sink, and told him that he was going to "fuck [his] ass now."  The complainant resisted, but Petitioner pulled down his own pants, exposed his penis, and forcibly kissed the complainant on the lips.  As the complainant exited the bathroom, Petitioner threatened to beat him if he said anything to anybody.  Petitioner then left the store with his friend.  Five or ten minutes later, Petitioner returned to the store with a beer, but he left the store a second time when the complainant told him to get out of there.

2

*Booker v. Palmer*, No. 10-12296

The complainant told a friend what happened and then called the police. He was hesitant to call the police immediately because he was gay and he feared that the police would not believe him. When the police arrived, he provided an oral and written statement.

William Vernier testified that he and the complainant were friends. He was talking to the complainant at the Speedway on October 25, 2006, when Petitioner and another man walked in the store at 11:45 p.m. Petitioner asked Vernier who he was, and when Vernier responded that he was a friend of the complainant, Petitioner backed him against the wall. Petitioner informed Vernier that the complainant was his "boo" and that, if Vernier hurt the complainant, he (Petitioner) would "fuck [him] up." Petitioner was loud and rude and smelled of alcohol.

Vernier stood there for a few minutes and then walked up to the front counter where the other man was standing. He turned around to see where the complainant had gone and started to go to the back of the store, but the man who had come inside the store with Petitioner said, "I wouldn't do that." He called for the complainant because he heard some things fall and hit the stainless sink in the back room. A few seconds later, the complainant came running out of the back room. He appeared to be upset. Petitioner and his friend left the store, but before leaving, Petitioner screamed a few more nasty words at Vernier.

Petitioner returned to the store a short time later with a can of beer, but the complainant told him to get out of there. The other man returned about twenty minutes later. He went up to the counter and said that "he was not involved in any of this." After Vernier pointed the man out to a police officer who had arrived on the scene, the officer tried to retain the man, but the man pushed the officer and ran out of the store.

3

*Booker v. Palmer*, No. 10-12296

Eastpointe Police Officer Frederick Scott testified that he responded to the incident at the Speedway and interviewed the complainant and Mr. Vernier. Officer Scott reviewed a tape of the incident and identified Petitioner at trial as one of two subjects seen in the tape. A pair of jeans that was turned over to Officer Scott had a rip in the left rear pocket, indicating that some sort of force was used on them.

Officer Scott attempted to arrest the individual who was with Petitioner at the Speedway, but the man refused to provide identification. When Officer Scott explained that he was going to retain the man pending an investigation, the man pushed him and fled from the store. Officer Scott had no further contact with the man. Petitioner, however, was retained, and during his subsequent booking, he informed Officer Scott that he had merely hugged the complainant.

Detective Robert Anderson testified that he interviewed Petitioner on January 5, 2007. Petitioner twice stated that he may have hugged the complainant, but after stating that he had been told to tell the truth, Petitioner said, "Let's say I didn't then." Petitioner also denied kissing or touching the complainant in a sexual manner.

### 2. Defense and Rebuttal Witnesses; Closing Arguments

Petitioner and his girlfriend testified for the defense. Petitioner explained that he lived with his girlfriend and her children. He denied being a homosexual, and he stated that he had not engaged in any homosexual behavior as a teenager or as an adult. He estimated that he had been to the Speedway store hundreds of times for cigarettes. He claimed that he knew Rochelle, the store manager, and had seen the complainant there three or four times. He stated that, on the night in question, he went in the Speedway store to use the bathroom, as he had done three or

4

*Booker v. Palmer*, No. 10-12296

four times in the past.  He claimed that, as he stood over the toilet in the bathroom, the

complainant entered the room.  He was caught off guard, and when the complainant became

cocky, he informed the complainant that he was not stealing anything and that "[he] ain't got to

be standing there watching me like that."

Petitioner denied touching or kissing the complainant or putting his hands on the

complainant's jeans.  He also claimed that nothing fell and that the complainant did not cry out.

He admitted returning to the store a second time and knowing that the complainant was gay.  But

he denied making a statement about the complainant being his "boo," and he denied having any

intent to make sexual contact with the complainant.  He insisted that he had merely intended to

use the bathroom and leave.  When asked why the complainant might have made allegations

about him, Petitioner said that he did know, but the complainant might have gotten in trouble

with his relationship.  On cross-examination, Petitioner stated that all the things the complainant

had said about him were untrue.

Petitioner's girlfriend, Cheryl Riskey, testified that she lived with Petitioner and had

sexual relations with him.  She claimed that Petitioner used the term "sugar booty" to describe

people and that she was not aware of any homosexual tendency on his part.

Detective Baker testified as a rebuttal witness.  He explained that he took digital

photographs of the exterior and interior of the Speedway gas station at defense counsel's request.

During closing arguments, the prosecutor focused on the elements of the crimes and the

credibility or lack of credibility of witnesses.  Defense counsel urged the jury to find Petitioner

not guilty of any sexual crime.  He maintained that, even if the jurors believed everything that

5

*Booker v. Palmer*, No. 10-12296

the complainant said, as far as a physical confrontation or assault was concerned, the crime was

an assault and battery.  The trial court subsequently instructed the jury on the charged offense

and the lesser offenses of assault with intent to commit criminal sexual conduct in the second-

degree, criminal sexual conduct in the fourth degree, and assault and battery.

3**. The Verdict, Sentence, and Direct Appeal**

On January 16, 2007, the jury found Petitioner guilty of the lesser offense of assault with

intent to commit second-degree criminal sexual conduct.  *See* Mich. Comp. Laws § 750.520g(2).

The trial court sentenced Petitioner as a habitual offender to imprisonment for thirty to one

hundred eighty months (two and a half to fifteen years).  The Michigan Court of Appeals

affirmed Petitioner's conviction, *see People v. Booker*, No. 283490, 2009 WL 2382466 (Mich.

Ct. App. Aug. 4, 2009), and on February 26, 2010, the Michigan Supreme Court denied leave to

appeal.  *See People v. Booker*, 485 Mich. 1100 (2010) (table).

**B.  The Habeas Petition and Responsive Pleading**

On June 10, 2010, Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. §

2254.  He raises a claim about the prosecutor and a claim about the state district court's denial of

his request to produce a *res gestae* witness at the preliminary examination.  Respondent Carmen

D. Palmer argues in an answer to the petition filed through counsel that Petitioner procedurally

defaulted one of his subclaims about the prosecutor and that Petitioner's other claims lack merit.

## II.  STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

6

*Booker v. Palmer*, No. 10-12296

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id*. at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  *Id*. at 411.

### III.  DISCUSSION

**A.  The Prosecutor**

The first habeas claim alleges prosecutorial misconduct.  Petitioner contends that the

prosecutor deprived him of a fair trial and his right to present a defense by:  (1) threatening a *res*

7

*Booker v. Palmer*, No. 10-12296

*gestae* witness whom Petitioner wanted to call as a witness; (2) introducing hearsay evidence in violation of his confrontation rights; (3) and arguing that Petitioner had the duty to produce witnesses to prove his innocence.  The Michigan Court of Appeals disagreed with each of these claims.

### 1.  Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on a prosecutorial-misconduct claim, a habeas petitioner must demonstrate that the prosecutor's conduct infected his trial with such unfairness as to make the resulting conviction a denial of due process.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The misconduct must have been "so egregious as to render the entire trial fundamentally unfair."  *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979).

Claims of prosecutorial misconduct are subject to harmless-error analysis.  *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003) (citing *Hill v. Brigano*, 199 F.3d 833, 847 (6th Cir. 1999)).  An error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### 2.  Threatening to Arrest a Witness

Petitioner alleges that the prosecutor deprived him of his rights to compulsory process, to due process, to defend himself, and to present witnesses in his behalf by threatening to arrest

8

*Booker v. Palmer*, No. 10-12296

James Toney[1] if Mr. Toney appeared at trial. The Michigan Court of Appeals adjudicated this claim on the merits and rejected it. The Court of Appeals stated: "Assuming that Ton[e]y was afraid to come to court for fear of being arrested, the question is whether the possibility of arrest was communicated to him by someone, who that someone was, and whether it was done for the purpose of keeping Ton[e]y from testifying." *Booker*, 2009 WL 2382466, at *2. The Court of Appeals found no proof in the record that the police knew where Mr. Toney was, that they knew he was a possible witness, and that they communicated with him, but did not arrest him. The Court of Appeals concluded that Petitioner had failed to meet his burden of establishing a miscarriage of justice stemming from the prosecutor's actions.

### a. Legal Framework

The Supreme Court explained in *Washington v. Texas*, 388 U.S. 14 (1967),      that

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id*. at 19.

"*Washington v. Texas* clearly established that, under the Sixth Amendment, a state may not arbitrarily deny a defendant the right to call a witness whose testimony is relevant and material to the defense." *Davis v. Straub*, 430 F.3d 281, 289 (6th Cir. 2005). The standard for

---

[1] Although Petitioner spells this person's surname as "Tony," the person spells his surname as "Toney" in his affidavit, which was filed in state court. The Court has adopted the spelling used in the affidavit.

9

*Booker v. Palmer*, No. 10-12296

finding a constitutional violation for witness intimidation is whether the words used "'could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify.'" *Id*. at 287 (quoting *Webb v. Texas*, 409 U.S. 95, 98 (1972)).

"Government conduct that rises to the level of substantial interference with a witness's 'free and unhampered determination to testify'" violates the right to present witnesses in one's behalf to establish a defense. *Johnson v. Bell*, 525 F.3d 466, 480 (6th Cir. 2008). But to demonstrate a violation of the constitutional right to compulsory process and the related right to due process, defendants must show more than that they were deprived of a witness's testimony; they must make a plausible showing of how the missing witness's testimony would have been both material and favorable to their defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 871-72 (1982). And even when governmental interference with a witness's free and unhampered determination to testify occurs, "a violation of a defendant's right to call witnesses in his defense is subject to harmless error analysis." *United States v. Emuegbunam*, 268 F.3d 377, 400 (6th Cir. 2001); *see also United States v. Foster*, 128 F.3d 949, 953 & 953 n. 4 (6th Cir. 1997).

### b. Application

James Toney was the individual who accompanied Petitioner to the Speedway gas station on October 25, 2006. The testimony at trial established that Toney was in the front of the store during the alleged assault on the complaining witness in the back room. After Petitioner and Mr. Toney left the store, Toney returned. He informed William Vernier that he had nothing to do

10

*Booker v. Palmer*, No. 10-12296

with the incident, but when a police officer attempted to retain him pending an investigation, he brushed past the officer and fled from the scene.

On the first day of trial, Petitioner informed the trial court that a potential defense witness was afraid to appear in court because the police had threatened to arrest the witness if he appeared in court and testified for the defense. Defense counsel identified the witness as James Toney, Jr. The prosecutor then explained to the trial court that Mr. Toney had entered the Speedway store with Petitioner and was involved in an incident with Police Officer Scott. Toney fled from the scene, and although the police gave chase, they were not able to locate him and had been looking for him. The prosecutor stated that he would not prevent Mr. Toney from testifying, but that the police did plan to arrest Toney on a resisting and obstructing charge. The trial court responded, "Nothing I can do about that." (Tr. Jan. 12, 2007, at 10-11.) Petitioner claims that the prosecutor made an improper threat, which prevented Mr. Toney from testifying and deprived Petitioner of due process, compulsory process, and his right to present witnesses in his defense.

The Michigan Court of Appeals stated that there was no evidence, other than Petitioner's self-serving assertion, that the police knew who and where Toney was or that he was a possible witness or that they communicated with him, but did not arrest him. Although the police may not have communicated directly with Toney, the prosecutor confirmed at trial that charges would be filed against Toney and that he would be arrested if he appeared. Toney, moreover, states in an affidavit that the prosecutor informed Petitioner's attorney of the threat and that Petitioner's attorney told him that he would be arrested and charged with interfering with the police or an investigation if he showed up. It can reasonably be assumed that the threat to arrest Toney was

11

*Booker v. Palmer*, No. 10-12296

communicated to Toney through Petitioner or Petitioner's attorney.  And even though the

prosecutor stated that Toney could testify in Petitioner's behalf, the threat to arrest him "could

well have exerted such duress on [his] mind as to preclude him from making a free and voluntary

choice whether or not to testify."  *Webb v. Texas,* 409 U.S. at 98.  But to prevail on his claim,

Petitioner must show that Toney's testimony would have been favorable and material to his

defense, *Valenzuela-Bernal*, 458 U.S. at 872-73, and not harmless error, *Emuegbunam*, 268 F.3d

at 400.

 The record indicates that only Petitioner and the complainant were in the bathroom where

the alleged assault occurred.  James Toney remained in the front of the store near Petitioner's

friend, William Vernier.  Consequently, Toney would not have been able to  say whether an

assault occurred.

 If Toney had testified consistent with the affidavit that was submitted to the state court, he

would have said that the complainant was not crying and did not look upset when Petitioner and

the complainant returned to the front of the store.  *See* Affidavit of James Toney, App. A1 of

Answer in Opp'n to Pet. for Writ of Habeas Corpus.  Toney also might have testified that he did

not hear any loud noises coming from the back of the store and that he did not say to William

Vernier, "I wouldn't go back there."  *See id*.  Although this testimony would have contradicted Mr.

Vernier's testimony, Vernier's testimony was corroborated in part by the testimony of the

complainant and Officer Frederick Scott.  The complainant, of course, testified that Petitioner

assaulted him, and Officer Scott testified that the complainant was "definitely frightened" after the

incident.  (Tr. Jan. 12, 2007, at 169.)  The critical issue at trial was whether Petitioner committed a

*Booker v. Palmer*, No. 10-12296

sexual crime, and Toney's affidavit says nothing about Petitioner's conduct in the back room or whether Petitioner told him what happened there.

Mr. Toney's affidavit, moreover, contradicts Petitioner's trial testimony in some respects. Toney states in his affidavit that he and Petitioner stopped at the Speedway to get something to eat, whereas Petitioner testified that he went to the Speedway to use the bathroom.  (Tr. Jan. 12, 2007, at 196-97.)  Mr. Toney states in his affidavit that Petitioner asked to speak with the complainant at the Speedway and that Petitioner and the complainant then went to the back room.  Petitioner, on the other hand, testified that he merely told the complainant that he was going to use the bathroom. He then went to the bathroom and was subsequently shocked to see the complainant standing behind him as he was about to urinate.  (*See id.* at 197-200, 210-11.)

Furthermore, according to Respondent, Toney has a criminal record and was an absconder at the time.  Records maintained by the Michigan Department of Corrections confirm that Toney is an absconder from probation for the crime of writing three or more checks with insufficient funds within ten days.[2]  If he had turned himself in and testified for Petitioner, he likely would have been impeached with his criminal record, his absconder status on October 25, 2006, and his failure to cooperate with the police at the Speedway while the police were investigating the incident involving Petitioner.

The Court concludes that James Toney would not have been a favorable and material defense witness.  His testimony certainly was not "vital to the defense."  *Washington v. Texas*, 388 U.S. at 16.  Thus, Petitioner's constitutional rights to compulsory process and due process were not

---

[2]  *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=583581.

*Booker v. Palmer*, No. 10-12296

violated.  To the extent that the prosecutor's threat to arrest Toney was unconstitutional, the error could not have had a substantial and injurious effect on the jury's verdict and was harmless.

### 3.  Hearsay Evidence

According to Petitioner, the prosecutor not only prevented James Toney from testifying for the defense, but he also elicited hearsay evidence concerning Mr. Toney.  Specifically, William Vernier testified that Mr. Toney returned to the Speedway after the alleged assault involving Petitioner and stated that he had nothing to do with the incident.  Petitioner contends that this testimony was improper hearsay, which implied that he (Petitioner) had done something wrong.  Petitioner also alleges that the hearsay violated his rights of confrontation because he was prevented from asking Mr. Toney whether he made the statement and, if he did, what he meant by it.

### a.  Procedural Default and Petitioner's State Law Argument

The Michigan Court of Appeals stated on review of the claim that Petitioner's failure to show where in the record the improper testimony was elicited and admitted was a basis for denying relief on this issue.  Consequently, Respondent argues that Petitioner's claim is procedurally defaulted.  This Court, however, finds no merit in Petitioner's claim, and procedural default is not a jurisdictional limitation.  *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010).  The Court therefore will address the substantive merits of Petitioner's claim and excuse the alleged procedural default.

To the extent Petitioner is alleging a violation of the Michigan Rules of Evidence on hearsay, his claim is not cognizable here.  *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009).

14

*Booker v. Palmer*, No. 10-12296

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (*per curiam*)).

### b. The Constitutional Argument

Petitioner's related constitutional argument is that the disputed hearsay evidence violated his right to confront the witnesses against him. The Michigan Court of Appeals determined that the disputed testimony was not offered for the truth of the matter and, therefore, it was not hearsay, but was admissible under the Michigan Rules of Evidence. With respect to Petitioner's constitutional argument, the Court of Appeals stated that Petitioner's right of confrontation was not violated because the statement was not testimonial hearsay within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004).

### i. Legal Framework

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Idaho v. Wright*, 497 U.S. 805, 813 (1990). Testimonial hearsay evidence may not be introduced against a defendant in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. at 68. The term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*

> Statements are nontestimonial when made in the course of police interrogation
> under circumstances objectively indicating that the primary purpose of the

15

*Booker v. Palmer*, No. 10-12296

interrogation is to enable police assistance to meet an ongoing emergency. They
are testimonial when the circumstances objectively indicate that there is no such
ongoing emergency, and that the primary purpose of the interrogation is to establish
or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006).

### ii. Application

The evidence in dispute here is William Vernier's testimony that James Toney walked up
to the counter at the Speedway and stated that "he was not involved in any of this." Petitioner
claims that Mr. Toney's statement was testimonial because it was made to police officers during
an interrogation and could reasonably have been expected to be used at trial. The record,
however, indicates that, Mr. Toney made the statement to William Vernier, who went to the back
of the store and asked an investigating police officer to come out. Vernier then pointed out Mr.
Toney to the officer. (Tr. Jan. 12, 2007, at 162.) Vernier's testimony indicates that Mr. Toney's
statement was not, in fact, the result of a police interrogation.

Police Officer Frederick Scott's testimony tends to confirm that Mr. Toney's comment
was not made in response to police interrogation. Officer Scott testified that he attempted to
identify James Toney at the store, but Toney refused to provide any identification. When Officer
Scott explained to Toney that he intended to retain him pending an investigation, Toney pushed
the officer and fled from the store. Officer Scott had no future contact with Toney. (*Id*. at 178-
79.)

The Court concludes from William Vernier's and Officer Scott's testimony that Mr.
Toney's statement was not made during the course of a police interrogation. It appears instead to

16

*Booker v. Palmer*, No. 10-12296

have been a volunteered statement to William Vernier. The statement therefore does not qualify as testimonial hearsay.

Even if Toney's statement were testimonial evidence, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington,* 541 U.S. at 59 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). It does not appear that the prosecutor admitted Mr. Toney's statement for the truth of the matter, that is, to show that Toney was not involved in the crime. For this additional reason, Petitioner's rights under the Confrontation Clause were not violated.

### 4. Closing Arguments

Petitioner's third and final claim about the prosecutor alleges that the prosecutor shifted the burden of proof to Petitioner during closing arguments. According to Petitioner, the prosecutor implied that Petitioner had the burden of producing James Toney and certain Speedway employees to support his claim of innocence. The Michigan Court of Appeals concluded that the prosecutor did not shift the burden of proof, but was merely arguing that Petitioner had failed to produce witnesses to corroborate his theory of the defense.

#### a. Legal Framework

"It is axiomatic that a defendant in a criminal trial need not testify or produce any evidence . . . ." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994). Consequently, "a prosecutor may not comment on the absence of such," *id.,* nor shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or suggest that the defendant has "'any obligation to produce evidence to prove his innocence,'" *Joseph v. Coyle*, 469 F.3d 441,

*Booker v. Palmer*, No. 10-12296

474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993)).  But

"a prosecutor *is* entitled to comment on a defendant's failure to call witnesses to contradict the

government's case" so long as he "avoid[s] commenting in such a way that he treads on the

defendant's constitutional rights and privileges."  *United States v. Clark,* 982 F.2d at 968

(emphasis added).

### b.  The Facts

The prosecutor's closing arguments in this case must be viewed in context.  Prior to

closing arguments, Petitioner testified that he went to the Speedway on October 25, 2006, to use

the bathroom and that the victim surprised him by following him into the bathroom and watching

him as he prepared to urinate.  Petitioner claimed that he knew Rochelle, the store manager, and

other store employees and that they had permitted him to use the bathroom on prior occasions.

He denied touching the complainant in a sexual manner, and he claimed that the complainant's

version of the facts was untrue.

In his closing argument, the prosecutor said:

We heard the Defendant denying everything and the Defendant making or putting
forth this story that he was going to use the bathroom.

    And he told you that he used the bathroom on a daily base [sic].  He wanted you
to believe that, but it is kind of funny that the Defendant had every resource.  He
could have called whoever he wanted to the stand.  If he decides to put up a
defense he could have called whoever he wanted.  He decides to call this one
individual who he says is his girlfriend.  The defense attorney has the power of
subpoena power to contact and to get anybody into court to defend the Defendant.
Where is this Rochelle girl that is supposed to let the Defendant use the bathroom
or the other two employees that supposedly let the Defendant use the bathroom?

18

*Booker v. Palmer*, No. 10-12296

Where is the Defendant's friend?  Why didn't he come and testify?  Why didn't they come and testify?  You can infer from that the Defendant had something to hide.

(Tr. Jan. 16, 2007, at 19-20.)

Defense counsel responded in his closing argument that there was no purpose in calling

Rochelle as a witness to prove that Petitioner knew her, because Petitioner, his girlfriend, and the

complainant established that fact.  Defense counsel went on to say:

I don't want to parade witnesses in here to waste your time, keep you here a week. We want you to focus on what is important for you to make your decision. Rochelle being here didn't really matter.

Same with this other man who is with Terry Booker that was there.  Why wasn't he called?  For what purpose?  What was he going to testify to?  What could he have told you?  He wasn't in that back room.  He doesn't know what took place.  There's no reason to present him.  We're not going to keep you here for a week with these sort of side track, side bar issues that really should have no effect on your ultimate decision.

(*Id*. at 52-53.)

The prosecutor then stated in his rebuttal argument:

Rochelle is important because the Defendant is trying to tell you he used that bathroom in the past.  He has gone back there and it is okay.  So if that is the truth, if that indeed is the truth, then why isn't Rochelle in here?  Why are the other two telling you that: Oh, yes, he's in there all the time.  He uses the bathroom.  Why aren't they here.  And the Defendant's friend who is in there, the one to one, the comment:  I wouldn't go back there, and then ran from the police.

. . . .

So yes, those people are relevant.  And the Defendant doesn't have to put on the defense, but he did.  If you could put on a defense and say those things, you better have the people to back you up and he didn't.

(*Id*. at 65-66.)

19

*Booker v. Palmer*, No. 10-12296

### c. Analysis

The prosecutor was entitled to "highlight the inconsistencies or inadequacies of the defense," *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and to point out the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). He did not say that Petitioner had the burden of proof or an obligation to prove his innocence. In fact, he acknowledged that Petitioner did not have to testify or put on a defense. (Tr. Jan. 16, 2007, at 18, 66.) Consequently, it was proper to comment on Petitioner's failure to call witnesses or to present exculpatory evidence. *United States v. Clark*, 982 F.2d at 968-69; *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002) (citing *United States v. Cabrera,* 201 F.3d 1243, 1250 (9th Cir. 2000); *United States v. Sblendorio,* 830 F.2d 1382, 1391 (7th Cir. 1987)).

Even if the prosecutor's remarks were improper, the comments were not flagrant. Although they were intentional, they likely did not mislead the jury or prejudice Petitioner, because defense counsel effectively rebutted the remarks by stating that it would have been a waste of time to subpoena Rochelle, Petitioner's friend, and other potential witnesses.

Furthermore, the trial court informed the jurors that Petitioner was presumed innocent, that the prosecutor was required to prove each element of the crime beyond a reasonable doubt, and that Petitioner was not required to prove his innocence or to do anything. The trial court also informed the jurors that the attorneys' arguments were not evidence, but were meant to help the jurors understand the evidence and each side's legal theory. (Tr. Jan. 16, 2007, at 72-73.)

A trial court generally can correct improprieties in a prosecutor's closing argument "by instructing the jury that closing arguments are not evidence." *United States v. Crosgrove*, 637

20

*Booker v. Palmer*, No. 10-12296

F.3d 646, 664 (6th Cir. 2011) (citing *United States v. Emuegbunam*, 268 F.3d at 406.  The

generalized instructions that the court gave to the jury served "if only moderately," to reduce any

prejudice caused by the prosecutor's remarks.  *United States v. Gracia*, 522 F.3d 597, 604 (5th

Cir. 2008).

For all the reasons given above, the state appellate court's rejection of Petitioner's claims

about the prosecutor was not so "lacking in justification" that it resulted in "an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786-87 (2011).  Petitioner

therefore is not entitled to habeas corpus relief on his prosecutorial-misconduct claims.

**B.  The Preliminary Examination**

Petitioner alleges that the state district court and his trial attorney deprived him of his right

to present a defense, his right to cross-examine witnesses, and his right to effective impeachment

of witnesses by denying, or failing to support, his request to have *res gestae* witnesses testify at

the preliminary examination.  According to Petitioner, the witnesses were needed for discovery

and impeachment purposes.  The Michigan Court of Appeals determined on review of this claim

that it lacked merit, because Petitioner did not ask the trial court to compel the testimony and

because his attorney decided not to call the particular witness in question even though Petitioner

was insistent.

*Booker v. Palmer*, No. 10-12296

**1. The State Court's Denial of the Request to Present a Witness**

    **a.  Clearly Established Federal Law**

There is no constitutional right to a preliminary examination.  *Gerstein v. Pugh*, 420 U.S. 103, 123, 125 n.26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965).  Thus, one could argue that Petitioner had no constitutional right to call witnesses at that stage of the proceedings and that his claim is not cognizable on habeas review.  *See, e.g., Scott v. Bock*, 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003) (stating that, "[t]o the extent that the petitioner believes that the trial court violated Michigan state law in denying him a preliminary hearing, that claim is not cognizable on federal habeas review")

  Nevertheless, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)), and the preliminary examination serves two important functions:  it serves "as a screening device to reduce the chances of chances of prosecuting and convicting an innocent person" and it serves "to inform both the prosecutor and defense counsel of the strengths of their respective cases." *United States v. Morris*, 377 F. Supp. 2d 630, 638 (E.D. Mich. 2005), *affirmed in part and reversed in part on other grounds*, 470 F.3d 596 (6th Cir. 2006).  When, as in this case, "the defendant claims innocence and is not convinced by the witnesses, the value of the preliminary examination for the defense is to have on record the testimony of the witnesses.  This is vital for both preparation and possibly impeachment." *Id*. at 639.  The Court therefore assumes, for purposes of this opinion, that Petitioner has stated a cognizable claim.  That said, "[a] defendant's right to present relevant evidence is not unlimited,

22

*Booker v. Palmer*, No. 10-12296

but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308

(1998).

> While the Constitution thus prohibits the exclusion of defense evidence
> under rules that serve no legitimate purpose or that are disproportionate to the ends
> that they are asserted to promote, well-established rules of evidence permit trial
> judges to exclude evidence if its probative value is outweighed by certain other
> factors such as unfair prejudice, confusion of the issues, or potential to mislead the
> jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive . .
> . , only marginally relevant or poses an undue risk of harassment, prejudice, [or]
> confusion of the issues.

*Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (quotation marks and citations omitted)

(end bracket in original).

### b.  Application

The only witness at the preliminary examination was the complaining witness, whom

defense counsel cross-examined and re-cross-examined.  After the prosecution rested, the parties

made their respective arguments, and the district court ruled that there was probable cause to

believe that Petitioner committed the charged crime.

Defense counsel then explained to the trial court that Petitioner wanted to call William

Vernier as a witness.  Defense counsel stated that he had reviewed the police report, spoken with

Vernier in the hallway, and did not believe it was beneficial to Petitioner to have Vernier testify.

The district court responded by saying that the case was concluded for purposes of the probable

cause hearing and that defense counsel had made a tactical decision not to call Vernier as a

witness.  The court also noted that Petitioner was not precluded from calling Vernier at trial or at

23

*Booker v. Palmer*, No. 10-12296

a subsequent hearing.  (Tr. Nov. 14, 2006, at 35-37.)  Petitioner's case was then transferred to the state circuit court.

Petitioner does not allege what William Vernier would have said had he testified.   Vernier testified at trial that the complainant appeared to be upset when he came out of the back room, and he described Petitioner as rude and intoxicated.  Judging from Vernier's trial testimony, his testimony at the preliminary examination would not have helped Petitioner.  The Court therefore concludes that Petitioner was not deprived of a meaningful defense by the state district court's decision to prevent Petitioner from presenting William Vernier as a witness at the preliminary examination.

### 2.  Trial Counsel

Petitioner alleges that his trial attorney was ineffective for failing to point out the importance of calling additional *res gestae* witnesses such as Mr. Vernier at the preliminary examination.  The Michigan Court of Appeals rejected this claim after concluding that defense counsel's decision not to call Mr. Vernier was sound strategy.

### a.  Clearly Established Federal Law on Ineffectiveness Claims

To prevail on his claim, Petitioner must demonstrate that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . .   [T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 687-88.  Because of the difficulties inherent in

24

*Booker v. Palmer*, No. 10-12296

evaluating an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91,101 (1955)).

To demonstrate that counsel's performance prejudiced the defense, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### b.  Application

The only person that Petitioner says defense counsel should have called as a witness at the preliminary examination is William Vernier.  As noted, Petitioner does not allege what Vernier would have said.  He merely says that Vernier might have given inconsistent testimony.  The Court understands this to mean that Vernier might have contradicted the testimony of the complaining witness.  But this is mere speculation and unlikely, given the fact that Vernier was a friend of the complaining witness.

Further, it is obvious from the record that defense counsel, as a matter of strategy, opted not to call Vernier after speaking with Vernier and reviewing the police record.  It was reasonable

25

*Booker v. Palmer*, No. 10-12296

trial strategy not to call a witness whose testimony had the potential to harm Petitioner's case, rather than benefit him.  As the state court recognized, "[a] review of [Mr. Vernier's] testimony at trial reflects that defense counsel's initial assessment of the benefit of the testimony to defendant's case was correct."  *Booker*, 2009 WL 2382466, at *7.

The potential for impeachment evidence was weak.  Therefore, defense counsel's strategy was reasonable, and Petitioner has not satisfied the *Strickland* standard.  *See Strouth v. Colson*, 680 F.3d 596, 602 (6th Cir. 2012) (stating that "[i]t is not easy to satisfy *Strickland* through the failure to impeach prosecution witnesses when the impeachment evidence is weak and cumulative, and the evidence of the defendant's guilt is 'overwhelming. . . .'").  The Court concludes that defense counsel's failure to call Vernier as a witness was objectively reasonable and did not constitute deficient performance.

Petitioner also has failed to prove the prejudice prong of *Strickland*.  Because he cannot show what Vernier's testimony would have been, he cannot demonstrate that he was prejudiced by his attorney's failure to call Vernier.  *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).  Having failed to demonstrate deficient performance and resulting prejudice, Petitioner has no right to habeas relief on his ineffective-assistance-of-counsel claim.

*Booker v. Palmer*, No. 10-12296

## IV.  CONCLUSION

The state appellate court's adjudication of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for writ of habeas corpus is **DENIED**.

Reasonable jurists, however, could debate whether Petitioner's prosecutorial-misconduct claim should have been resolved in a different manner or, at least, whether that issue is adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Therefore, a certificate of appealability may issue on Petitioner's claims about the prosecutor. Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).


S/Arthur J. Tarnow                                        
Arthur J. Tarnow
United States District Judge


Dated: October 17, 2012


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on October 17, 2012, by electronic and/or ordinary mail.


S/Catherine A. Pickles                          
Judicial Assistant

27